IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIMOTHY LOUIS FREEMAN, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No.  3:15-CV-3640-N-BH |
| | § | |
| NANCY A. BERRYHILL, ACTING, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| **Defendant.** | § | **Referred to U.S. Magistrate Judge** |

<u>FINDINGS, CONCLUSIONS, AND RECOMMENDATION</u>

Pursuant to *Special Order No. 3-251*, this social security appeal was automatically referred for full case management.  Before the Court are *Plaintiff's Memorandum–Social Security*, filed April 4, 2016 (doc. 15), *Defendant's Brief*, filed May 4, 2016 (doc. 16), and *Plaintiff's Reply Memorandum–Social Security*, filed May 24, 2016 (doc. 17).  Based on the relevant filings, evidence, and applicable law,  the Commissioner's decision should be **AFFIRMED**.

## I. BACKGROUND[1]

### A.    <u>Procedural History</u>

Timothy Louis Freeman (Plaintiff) seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner)[2] denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act (Act).  (R. at 1, 75.)  On September 7, 2013, Plaintiff filed his application for disability benefits under Title II of the Act, alleging disability

---

[1]   The background information is summarized from the record of the administrative proceeding, which is designated as "R."

[2]   At the time of the filing of this appeal, Carolyn W. Colvin was the Acting Commissioner of the Social Security Administration, but she was succeeded by Nancy A. Berryhill beginning January 20, 2017.

beginning on January 1, 2013.  (R. at 24.)  His claim was denied initially and upon reconsideration. (R. at 76-84.) Plaintiff requested a hearing before an Administrative Law Judge (ALJ), and personally appeared and testified at a hearing on December 17, 2014.  (R. at 48-64.)  On March 12, 2015, the ALJ issued a decision finding that Plaintiff was not disabled and denying his claim for benefits.  (R. at 21-47.)

Plaintiff timely appealed the ALJ's decision to the Appeals Council and included new medical evidence. (R. at 1.) The Appeals Council determined that the new evidence did not provide a basis for changing the decision and denied his request for review on September 17, 2015, making the ALJ's decision the final decision of the Commissioner.   (R. at 1-2.)  Plaintiff timely appealed under 42 U.S.C. § 405(g). (*See* doc. 1.)

**B.**    **Factual History**

    **1.**    **Age, Education, and Work Experience**

Plaintiff was born on January 6, 1959, and was 55 years old at the time of the hearing before the ALJ. (R. at 50-51.)  He left high school in the 12th grade but later earned a GED.  (R. at 51.) He had past relevant work as a truck driver. (R. at 51.)

    **2.**    **Medical Evidence**

On February 19, 2013, Plaintiff began treatment with Dr. Andrew Oteo, D.C., at American Chiropractic Clinic, for lower back and neck pain after a slip-and-fall accident.  (R. at 241.)  He was diagnosed with lumbar disc displacement, lumbar sciatica, sacrum strain, and cervical disc displacement.  (R. at 241.)  Dr. Oteo recommended that he receive treatment three times a week for three weeks at the clinic for chiropractic manipulative therapy and physical therapeutic modalities. (R. at 241.) The following day, Dr. Oteo provided his assessment that Plaintiff's neck disability

index was 16% with moderate pain.  (R. at 243.)  Plaintiff self-reported that he could lift heavy weights with extra pain, had no headaches, and could drive his car without any neck pain.  (R. at 243.)  His "overall assessment [was] good provided treatment recommendations [were] followed."  (R. at 244.)

Between February 22, 2013, and March 22, 2013, Plaintiff visited American Chiropractic Clinic fourteen times for treatment on his back and neck pain.  (R. at 244-59.)  His complaints were consistent at each treatment session regarding his pain, and his assessments were uniform: his condition was improving, he was feeling better, and his condition was improving as expected.  (R. at 245, 246, 247, 250, 252, 253, 255, 256, 257, 259.)  On March 22, 2013, he was released and told to contact the clinic if symptoms reappeared.  (R. at 259.)

On April 1, 2013, Plaintiff returned to American Chiropractic Clinic and complained that his back and neck pain felt much worse.  (R. at 259.)  He reported that his pain affected his normal activities of daily living when dressing, bending, stooping, and driving.  (R. at 259.)  He also reported that the pain seemed to be better but "improvement [was] slow."  (R. at 259.)  Dr. Oteo found that he had nominal subluxations in the lumbar spine and recommended further treatment.  (R. at 259-60.)

Between April 9, 2013, and September 3, 2013, Plaintiff visited American Chiropractic Clinic seven times for treatment on his back and neck pain.  (R. at 260-68.)  At an evaluation on May 30, 2013, Dr. Oteo assessed Plaintiff's neck disability index as 40% with fairly severe pain.  (R. at 263.)  Plaintiff's complaints were again consistent at each treatment session, and he received uniform assessments that his condition was improving, he was feeling better, and his condition was improving as expected.  (R. at 260, 261, 264, 265, 266, 267.)

On October 23, 2013, Plaintiff met with Dr. Cecilier Chen, M.D., for a consultative examination of his back and neck pain. (R. at 270-77.) He reported that his back pain was "on and off" with a pain level of 5/10 and that his neck pain felt worse when he drove. (R. at 270.) He also received X-rays that showed mild to moderate degenerative disc disease in his back and neck. (R. at 275-77.) His range of motion testing results were normal with limits on the cervical and lumbar extension. (R. at 272.) Dr. Chen's diagnostic impressions were chronic lower back pain with some degenerative change, some degenerative neck pain, no significant hip pain, obesity, and borderline hypertension. (R. at 274.)

On September 23, 2013, October 14, 2013, November 4, 2013, and November 26, 2013, Plaintiff received treatment at American Chiropractic Clinic. (R. at 300-04.) During the treatment on September 23, 2013, his neck disability index was assessed at 40% with "fairly severe" pain. (R. at 300.) Plaintiff received consistent assessments that he was somewhat better and that his condition was improving slowly. (R. at 302, 303, 304.)

On November 6, 2013, Dr. Kim Rowlands, M.D., a state agency medical consultant (SAMC), completed a disability determination report and a residual functioning capacity (RFC) assessment based upon the evidence on record. (R. at 70-74.) Dr. Rowlands diagnosed Plaintiff's impairments as degenerative disc disease and obesity. (R. at 70.) She further opined that Plaintiff had the following limitations: occasionally able to lift and carry 50 pounds; frequently able to lift and carry 25 pounds; able to stand, walk, or sit for a total of 6 hours in a 8 hour workday; and unlimited ability to push and pull. (R. at 72.)

On January 7, 2014, Plaintiff met with Dr. George Cole, D.O., of the Cole Wellness Center at Blue Lake for an orthopedic evaluation. (R. at 331-32.) Dr. Cole diagnosed him with a herniated

nucleus pulposus disc in his lumbar spine and a cervical flexion-extension neck sprain.  (R. at 332.)

He noted that all of Plaintiff's symptoms were a direct result of his slip-and-fall accident, and that

his chiropractic care and physical therapy should be continued.  (R. at 332.)  He also recommended

that Plaintiff complete a program of rehabilitation and reconditioning to continue recovery from the

injuries sustained in the accident.  (R. at 332.)

On January 10, 2014, Dr. Leigh McCrary, M.D., a SAMC, completed a disability

determination report and RFC assessment of Plaintiff based upon the evidence on record.  (R. at 76-

83.)  Dr. McCrary diagnosed his impairments as degenerative disc disease and obesity.  (R. at 80.)

She further opined that Plaintiff had the following limitations: occasionally able to lift and carry 50

pounds; frequently able to lift and carry 25 pounds; able to stand, walk, or sit for a total of 6 hours

in a 8 hour workday; and unlimited ability to push and pull.  (R. at 81.)

On November 11, 2014, Dr. Oteo completed a Medical Opinion Re: Ability to do Work-

Related Activities (Physical) form for Plaintiff.  (R. at 337-342.)  He opined that Plaintiff could lift

and carry 10 pounds at maximum; could stand, sit, and walk for less than 2 hours during an 8-hour

day; must alternate positions of standing, siting, or walking every 5 minutes to relieve discomfort;

and would need to lie down during every 2 hour interval.  (R. at 339.)  Plaintiff could never stoop

or climb ladders and only occasionally twist, crouch, and climb stairs.  (R. at 340.)  He would be

expected to be absent more than four days per month because of his impairment, and his limitations

could be expected to last longer than one year.  (R. at 340.)  Dr. Oteo also recommended that

Plaintiff undergo a functional capacity evaluation to "objectively quantify his disability with work-

related activities."  (R. at 337, 340.)

### 3.      Hearing Testimony

On December 17, 2014, Plaintiff and a vocational expert (VE) testified at a hearing before the ALJ. (R. at 48-64.)  Plaintiff was represented by an attorney. (R. at 50.)

#### a.      *Plaintiff's Testimony*

Plaintiff testified that he was a 55-year-old single man with no children.  (R. at 50-51.)  He left high school in the 12th grade but later received a GED.  (R. at 51.)  He had previously worked as a truck driver, but had not worked since January 2013 with the exception of two days in February 2013. (R. at 51.)

Plaintiff suffered from "extreme tightness" in his neck and back, and his knee began to swell after standing for an hour.  (R. at 51-52.)  The pain began after he had slipped in the shower of a motel and hit his shoulder and lower back on the tub.  (R. at 52.)  He had been meeting with a chiropractor for the past two years and had received treatment for one year.  (R. at 54.)  The chiropractor took X-rays and said that his neck would give him consistent headaches if it became worse.  (R. at 53.)  The chiropractor also said that he had "pinched a nerve" in his lower back.  (R. at 53.)  Plaintiff had a lapse in his treatment from January 2014 to October 2014, because insurance "wouldn't pay any more to a certain point."  (R. at 54.)

Plaintiff further testified that he could stand between 45 minutes and an hour before having to sit down and rest the stiffness in his back.  (R. at 55.)  He could not go back to work as a truck driver because the bumps and pounding of driving 500 miles a day exacerbated the problems in his neck.  (R. at 55.)  He also could not work at a job where he stood all day because the "tightness in [his] neck and back would be problematic."  (R. at 55-56.)  He was able to relieve his pain by stretching out his back.  (R. at 56.)

The ALJ asked if any of the pain he felt was caused by arthritis. (R. at 58-59.)  Plaintiff testified that he previously had neck problems due to arthritis, and the fall in the motel room made his back and neck worse.  (R. at 60-61.)  When asked if he had undergone a functional evaluation as his chiropractor recommended, Plaintiff testified that he "checked into it" but was not "able to get things situated" before the hearing.  (R. at 61.)

### b.   VE's Testimony

The ALJ asked the VE to consider that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently, could sit, stand, and walk for six hours in an eight-hour work day, and had no postural manipulative, visual, communicative, or environmental limitations.  (R. at 57.)  The VE testified that Plaintiff could return to work as a truck driver based upon those limitations.  (R. at 57.)  The ALJ then asked if the symptoms that Plaintiff described during the hearing would be "a fatal conflict" with him returning to work as a truck driver.  (R. at 57-58.)  The VE responded that the additional symptoms would preclude Plaintiff from working as a truck driver.  (R. at 57-58.)

The ALJ next asked if the VE would "attempt to place him as a truck driver" or into some other occupation.  (R. at 62.)  The VE responded that she would wait until getting all evaluations back before attempting to place him in any occupation.  (R. at 62.)

### C.   ALJ's Findings

The ALJ issued his decision denying benefits on March 12, 2015.  (R. at 21-47.)  At step one,[3] he determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 1, 2013. (R. at 26.) At step two, he found the following impairments to be severe: degenerative disc disease, hypertension, and obesity.  (R. at 26-31.)  At step three, the ALJ

---

[3] A five-step analysis is used to determine whether a claimant is disabled under the Social Security Act and is described more specifically below.

concluded that Plaintiff's severe impairments did not meet or equal the requirements for presumptive disability under the listed impairments in 20 C.F.R. Part 404.  (R. at 32.)

Next, the ALJ determined that Plaintiff's subjective complaints were not wholly credible to the extent alleged.  (R. at 34-37.)  The ALJ determined that Plaintiff retained the RFC for medium work, including the ability to lift and carry 50 pounds occasionally and 25 pounds frequently and to sit, stand, and walk 6 hours in an 8-hour workday.  (R. at 34.)

At step four, the ALJ determined that Plaintiff was capable of returning to past relevant work as a truck driver because it did not require the performance of work-related activities precluded by Plaintiff's assigned RFC.  (R. at 43.)  The ALJ relied upon the VE's testimony to find him capable of performing past relevant work as a truck driver.  (R. at 43.)  Because he found that Plaintiff could return to past relevant work, the ALJ did not reach step 5.  Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined by the Social Security Act, from January 1, 2013, through the date of the decision.  (R. at 43.)

**D.**     **New Evidence Submitted to the Appeals Council**

Plaintiff timely appealed the ALJ's decision to the Appeals Council and submitted new evidence consisting of MRI reports of his neck and back from North Texas Digital Imaging dated June 1, 2015, as well as the medical opinions of Drs. Abraham S. Abdo, M.D., and Nimesh H. Patel, M.D., dated June 5, 2015, and October 7, 2015, respectively.  (R. at 1-17, 343-51.)  Based on the MRI reports, both Drs. Abdo and Patel opined that Plaintiff had a herniated lumbar disc that could require surgery if other conservative treatment was ineffective.  (R. at 12-17.)

The Appeals Council denied his request for review on September 17, 2015, and determined that the new evidence did not provide a basis for changing the ALJ's decision. (R. at 1-2.)

8

## II. ANALYSIS

### A.    Legal Standards

#### 1.    Standard of Review

Judicial review of the commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence supports the Commissioner's decision. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id.* The Court may rely on decisions in both areas, without distinction, when reviewing an ALJ's decision. *Id.*

## 2.      Disability Determination

To be entitled to social security benefits, a claimant must prove he or she is disabled as

defined by the Social Security Act. *Leggett*, 67 F.3d at 563-64; *Abshire v. Bowen*, 848 F.2d 638, 640

(5th Cir. 1988).  The definition of disability under the Social Security Act is "the inability to engage

in any substantial gainful activity by reason of any medically determinable physical or mentla

impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*,

954 F.2d 189, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant

is disabled:

1.    An individual who is working and engaging in substantial gainful activity
      will not be found disabled regardless of medical findings.

2.    An individual who does not have a "severe impairment" will not be found
      to be disabled.

3.    An individual who "meets or equals a listed impairment in Appendix 1"
      will not be found to be disabled.

4.    If an individual is capable of performing the work he had done in the past,
      a finding of "not disabled" must be made.

5.    If an individual's impairment precludes him from performing his work,
      other factors including age, education, past work experience, and residual
      functional capacity must be considered to determine if work can be
      performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R.

§ 404.1520(b)-(f)) (currently 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2012)).  Under the first four steps

of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564.  The

analysis terminates if the Commissioner determines at any point during the first four steps that the

claimant is disabled or is not disabled.  *Id.*  Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236.  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by vocational expert testimony, or other similar evidence. *Froga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).  A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**B.     Issues for Review**

Plaintiff presents the following issues for review:

I.      The ALJ erred by failing in his duty to develop the record, to properly consider the credibility of Plaintiff's pain complaints, and by failing to consider Plaintiff's treating source opinion consistent with the regulations and Fifth Circuit precedent in *Newton v. Apfel.*

   A.      The ALJ's errors are not harmless.[4]

   B.      The ALJ failed in his duty to develop the record; as he stated on at least three occasions in his decision, the evidence regarding Plaintiff's limitations was unclear, necessitating a consultative examination.

   C.      At best the ALJ's analysis of Plaintiff's credibility is confusing and contradictory; at worst, it fails to follow the two-step process set forth in the regulations.

   D.      The ALJ's credibility finding is not only contrary to law, it is factually inaccurate and fails to perform the entire required analysis.

---

[4]  Plaintiff does not specifically identify any issue in this section, which purportedly "sets the stage" for his other arguments. (doc. 15 at 7-9.)  To the extent that this section presents additional argument specifically relating to his other issues, those arguments will be addressed in the discussion concerning the relevant issue.

E.     The ALJ failed altogether to evaluate the opinion of Plaintiff's treating medical source consistent with the regulations and Fifth Circuit precedent in *Newton*; moreover, in the process he posited a degree of deference to nonexamining state Agency consultants' opinions which is contrary to the regulations.

F.     The voices in the ALJ's head: further confusing review of the ALJ's decision is his persistent response to arguments Plaintiff never made.[5]

II.    The Appeals Council erred when it failed to find that an MRI report submitted three months after the ALJ's decision was not "new and material evidence" which required reconsideration by the ALJ.

(doc. 15 at 6.)

## C.     Duty to Develop

Plaintiff argues that the ALJ failed to develop the record by refusing to order a functional capacity examination as recommended by Dr. Oteo.  (doc. 15 at 9-11.)

An ALJ has a duty to fully and fairly develop the facts relative to a claim for benefits. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000) (citing *Ripley*, 67 F.3d at 557).  When the ALJ fails in this duty, he does not have sufficient facts upon which to make an informed decision, and his decision is not supported by substantial evidence.  *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir.1996); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir.1984).  For this reason, a reviewing court may reverse the ALJ's decision if the claimant can show that "(1) the ALJ failed to fulfill his duty to develop the record adequately and (2) that failure prejudiced the plaintiff." *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012).  The duty to obtain medical records generally belongs to the claimant, however.  *See Gonzalez v. Barnhart*, 51 F. App'x 484 (5th Cir. 2002); *Hawkins v. Astrue*, No. 3:09-

---

[5] Plaintiff similarly does not identify a new issue in this section but instead argues that portions of the ALJ's analysis "highlight the above errors demonstrated by Plaintiff in a more technical way."  (doc. 15 at 22.)  This argument will be considered during the appropriate issue.

CV-2094-BD, 2011 WL 1107205 at *7 (N.D. Tex. Mar. 25, 2011).

Under the social security regulations, an ALJ is required to re-contact a medical source only "[w]hen the evidence . . . from [the] treating physician or psychologist or other medical source is inadequate for [the Commissioner] to determine whether [the claimant is] disabled." *Cornett v. Astrue*, 261 F. App'x 644, 648 (5th Cir. 2008) (quoting 20 C.F.R. § 416.912(e)).   If the Commissioner determines that a treating physician's records are inconclusive or are otherwise inadequate to receive controlling weight, absent other medical opinion evidence by an examining or treating physician, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e). *Newton*, 209 F.3d at 457.  The Fifth Circuit has rejected the argument that an ALJ has a duty to obtain all of a plaintiff's medical records before reaching a decision.  *See Sun v. Colvin*, 793 F.3d 502, 509 (5th Cir. 2015).  The ALJ's duty is "one of developing all relevant facts, not collecting all existing records." *Id.* (internal quotations omitted) (citing *Castillo v. Barnhart*, 325 F.3d 550, 552-53 (5th Cir. 2003) (per curiam)).  The duty to develop the record can be effectuated by the ALJ's questioning of the claimant regarding his education, training, past work history, the circumstances of his injury, daily routine, pain, and physical limitations and given an opportunity to add anything else to the record. *Id.* ("Consistent with that description, the court often focuses on the ALJ's questioning of the claimant in order to determine whether the ALJ gathered the information necessary to make a disability determination.") (citing *Castillo*, 325 F.3d at 552-53; *Brock*, 84 F.3d at 728).

Here, the ALJ noted that Dr. Chen provided a consultative examination to Plaintiff but was not asked to provide a RFC capacity assessment, and that in those cases, SAMCs were "to translate the findings of the examining doctor into a usable format." (R. at 1639.)  The ALJ noted that using

13

Dr. Chen's examination, Dr. Oteo's medical records, and the other evidence on record, both Drs. Rowland and McCrary had agreed on Plaintiff's RFC, namely that he could occasionally lift or carry 50 pounds, frequently lift or carry 25 pounds, and stand, sit, or walk (with normal breaks) for a total of 6 hours in an 8-hour workday.  (R. at 71-72, 81.)  The ALJ further developed the record during the administrative hearing by going through Plaintiff's past work experience and training (R. at 50-51), his education (R. at 51), his accident (R. at 52-53), the circumstances of his health at the time (R. at 58-60), his treatment and symptoms (R. at 52-57), and he gave Plaintiff an opportunity to explain why he thought he could not go back to work as a full-time truck driver (R. at 55-56).  In response to Dr. Oteo's recommendation that Plaintiff receive an additional functional capacity evaluation, the ALJ explained that the only test that would "likely clarify the full extent of [Plaintiff's] physical restrictions" was a symptom validity test[6] as described in the Social Security Program Operations Manual Systems; however, "this type of [consultative examination] is not currently available and thus it would be futile to request one."  (R. at 40.)

There is no indication that the medical records before the ALJ were inadequate or that he lacked sufficient facts to make a determination.  Even if certain aspects of Plaintiff's medical history were not included in the medical record, that information was further developed by the ALJ at the hearing. (R. at 48-64.)  Additionally, Plaintiff has not demonstrated how a RFC evaluation would have led to a more favorable decision, and he never submitted an additional RFC assessment as new evidence to the Appeals Council.  The ALJ fulfilled his duty to fully and fairly develop the record.  Remand is not warranted on this basis.

---

[6]  Although the ALJ referred to the nonexistent Social Security Program Operations Manual System (POMS) DI 22510.007(D) in his findings, both parties agree that he was clearly referring to POMS DI 22510.06(D) dealing with symptom validity testing.  (docs. 15 at 10, 16 at 5-6.)

D.      **Credibility**

Plaintiff contends that the ALJ erred by failing to analyze his credibility properly under the two-step process. (doc. 15 at 11-18.)

When the ALJ issued his decision, Social Security Ruling: SSR 96–7p[7] required him to follow a two-step process for evaluating a claimant's subjective complaints. SSR 96–7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996). First, the ALJ must consider whether the claimant had a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. *Id.* Once such an impairment is shown, the ALJ must evaluate the intensity, persistence, and limiting effects of the alleged symptoms to determine the extent to which they limit the individual's ability to do basic work activities. *Id.* If the claimant's statements concerning the intensity, persistence, or limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a credibility finding regarding the claimant's statements. *Id.*; *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) (citing *Scharlow v. Schweiker*, 655 F.2d 645, 648-49 (5th Cir. 1985)).

The ALJ's credibility determination must be based on a consideration of the entire record, including medical signs and laboratory findings, and statements by the claimant and his treating or examining sources concerning the alleged symptoms and their effect. SSR 96–7p, 1996 WL 374186 at *2. The ALJ must also consider a non-exclusive list of seven relevant factors in assessing the

---

[7] Effective March 16, 2016, the Social Security Administration eliminated "use of the term 'credibility' from [its] sub-regulatory policy," clarifying "that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1020935 at *1 (S.S.A. Mar. 16, 2016). When the ALJ issued his decision here, SSR 96-7p was the relevant social security ruling and specifically used the term "credibility." SSR 96-7P, 1996 WL 374186 at *7 (S.S.A. July 2, 1996). His credibility finding is properly analyzed under SSR 96-7p. *See Mayberry v. Colvin*, No. CV G-15-330, 2016 WL 7686850 at *5 (S.D. Tex. Nov. 28, 2016), adopted, 2017 WL 86880 (S.D. Tex. Jan. 10, 2017) (noting that "[b]ecause the text of SSR 16–3p does not indicate the SSA's intent to apply it retroactively, the Court would be disinclined to do so"). Even if SSR 16-3p applied retroactively, however, the recommendation concerning this issue would not differ.

credibility of a claimant's statements:

    1. the claimant's daily activities;

    2. the location, duration, frequency, and intensity of pain or other symptoms;

    3. factors that precipitate and aggravate symptoms;

    4. the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms;

    5. treatment, other than medication, for relief of pain or other symptoms;

    6. measures other than treatment the claimant uses to relieve pain or other symptoms (*e.g.*, lying flat on his or her back);

    7. and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *Id.* at *3.

Although the ALJ must give specific reasons for his credibility determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Prince v. Barnhart*, 418 F. Supp. 2d 863, 871 (E.D. Tex. 2005). Moreover, the Fifth Circuit has explicitly rejected the requirement that an ALJ "follow formalistic rules" when assessing a claimant's subjective complaints. *Falco*, 27 F.3d at 164. The ALJ's evaluation of the credibility of subjective complaints is entitled to judicial deference. *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). The ALJ is in the best position to assess a claimant's credibility, since he "enjoys the benefit of perceiving first-hand the claimant at the hearing." *Falco*, 27 F.3d at 164 n.18.

### *1.*    *Step One*

Plaintiff first argues that the ALJ failed to find that a medically determinable impairment could reasonably be expected to produce his alleged symptoms of chronic pain under step one. (doc.

15 at 13.)

The ALJ spent an extensive part of his decision weighing and analyzing Plaintiff's credibility and subjective complaints because of the "high importance of chronic pain to [Plaintiff's] application for benefits." (R. at 32.) He first identified the correct standard of both the first and second steps under SSR 96–7p and 20 C.F.R. § 404.1529. (R. at 34.) The ALJ proceeded to identify Plaintiff's complaints of chronic pain and the specific evidence from his applications and testimony, including relevant information to be considered under step two. (R. at 35.) He then noted that Plaintiff's subjective complaints of chronic pain were "consistent with [a] perception [of disability]" and that the ". . . medical evidence provide[d] a basis for [Plaintiff to] experience some symptoms." (R. at 36-37.) He later assigned substantial weight to the opinions of Drs. Chen and Cole as medical evidence of Plaintiff's degenerative disc disease and pain. (R. at 39.) The ALJ additionally "assign[ed] substantial weight to the [SAMC] opinion(s) with regard to [Plaintiff's] credibility," i.e., that Plaintiff's medically determinable impairments could reasonably be expected to produce his alleged symptoms. (R. at 37, 71, 80.)

Though not in a formulaic way or method, the ALJ properly considered and determined that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, namely chronic pain, and there is substantial evidence to support his findings. *See Falco*, 27 F.3d at 164. The ALJ did not err, and remand is not necessary on this basis.

### 2.    *Step Two*

Plaintiff next argues that the credibility finding is "factually inaccurate" and that the ALJ failed to analyze Plaintiff's credibility under the required factors of step two and instead relied upon the assessment from the SAMCs. (doc. 15 at 16.)

The ALJ moved to step two of his credibility analysis by considering the intensity, persistence, and limiting effects of Plaintiff's alleged symptoms to determine the resulting physical limitations.  (R. at 36-37.)  The ALJ identified the seven factors and went through each one in his analysis.  (R. at 36.)  He first found that under activities of daily living, including using the telephone, managing medications and finances, and housekeeping, Plaintiff appeared independent in self-care and activities of daily living.  (R. at 35.)

Plaintiff argues that the ALJ failed to consider Plaintiff's activities of daily living because some of his complaints, including that he had difficulty with putting on his pants and socks, were not included in the analysis.  It is clear that the ALJ did consider this complaint because he noted these exact facts in the paragraphs immediately before his findings.  (R. at 35.)  Under location, duration, frequency, and intensity, the ALJ found that "medical evidence was not adequate to support a conclusion that [Plaintiff] was disabled."  (R. at 36.)  Under factors that precipitate and aggravate, he noted that Plaintiff claimed that his symptoms waxed and waned, and that medications did not fully control his symptoms.  (R. at 36.)

Under work history, the ALJ noted that Plaintiff was not disqualified from benefits due to substantial gainful activity.  (R. at 36.)  Plaintiff argues that the ALJ failed to consider his "exemplary work history" by omitting the number of quarters in which Plaintiff had covered earnings, but the record reflects that the ALJ did consider Plaintiff's prior work history even if he did not identify the exact number of quarters that Plaintiff worked.  *See Prince*, 418 F. Supp. 2d at 871 ("neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form . . . [it] suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were

considered"). Under treatment, the ALJ noted Plaintiff's treatment at the time and how additional treatment had been suggested. He explained that "either the symptomatology is not nearly as debilitating as the claimant alleges or doctors are relatively indifferent to [Plaintiff's] suffering." (R. at 36.) Under other factors, the ALJ noted that Plaintiff appeared "willing to work as many hours during a workweek as the impairments will allow." (R. at 36.)

After discussing the seven factors, the ALJ noted that Plaintiff's statements "regarding the degree of symptomatology were out of proportion to, and inconsistent with, the medical findings and expectations." (R. at 37.) This included the medical findings of Drs. Chen and Cole and the assessments of the SAMCs; the ALJ agreed with the express finding that a "disabling level of impairment is not substantiated by the medical evidence." (R. at 39-41.) He reiterated his findings at the end of his decision by stating that "[b]ased upon the evaluation of both the objective and subjective evidence of record, . . . the medically determinable impairments could produce some symptoms but could not reasonably be expected to produce the level alleged by [Plaintiff]." (R. at 43.)

Here, the ALJ properly analyzed and assessed Plaintiff's credibility under SSR 96–7p and 20 C.F.R. § 404.1529. Although not in a formalistic fashion, he considered the factors for determining credibility and adequately explained his reasons for rejecting Plaintiff's subjective complaints, and there is substantial evidence to support his determination. *See Falco*, 27 F.3d at 164. Courts, moreover, have articulated that the lack of objective medical evidence or treatment supports an ALJ's adverse credibility ruling. *See Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988) (recognizing "that an absence of objective factors indicating the existence of severe pain–such as limitations in the range of motion, muscular atrophy, weight loss, or impairment of general

nutrition–can itself justify the ALJ's conclusion.").  Furthermore, the Plaintiff bears the burden of proof through the first four steps of the ALJ's analysis, *see Greenspan*, 38 F.3d at 236, and the ALJ's evaluation of the credibility of subjective complaints is entitled to judicial deference, *see Carrier*, 944 F.2d at 247.  Remand is not required on this issue.[8]

## E.   Treating Source Opinion

Plaintiff next argues that the ALJ erred by failing to analyze Dr. Oteo's treating source opinion in accordance with  20 C.F.R. § 404.1527.  (doc. 15 at 18-20.)

The Commissioner is entrusted to make determinations regarding disability, including weighing inconsistent evidence. 20 C.F.R. § 404.1529(b). Every medical opinion is evaluated regardless of its source, but the Commissioner generally gives greater weight to opinions from a treating source. *Id*. at § 404.1527(c)(2). A treating source is a claimant's "physician, psychologist, or other acceptable medical source" who provides or has provided a claimant with medical treatment or evaluation, and who has or has had an ongoing treatment relationship with the claimant. *Id.* at § 404.1502. When "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," the Commissioner must give such an opinion controlling weight.  *Id*. at § 404.1527(c)(2).  If controlling weight is not given to a treating source's opinion, the Commissioner considers six factors in deciding the weight

---

[8]  Plaintiff also argues that certain portions of the ALJ's decision discuss "arguments that Plaintiff never made" about the need for objective evidence for a finding of disability , and that this confirms that the credibility analysis was contrary to law.  (doc. 15 at 20-22.)  He fails to explain how these passages "confirm" any error and fails to cite to any authority to support his assertions.  (*See id.*)  Moreover, the decision appears to be responding, albeit indirectly, to arguments counsel made during the administrative hearing regarding the source of Plaintiff's chronic pain and the lack of objective medical evidence to support the complaints.  (R. at 58-63.)  As noted, the ALJ's credibility determination is supported by substantial evidence, and remand is not required on this basis.

given to each medical opinion: (1) whether the source examined the claimant or not; (2) whether the source treated the claimant; (3) the medical signs and laboratory findings that support the given opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is made by a specialist or non-specialist; and (6) any other factor which "tend[s] to support or contradict the opinion." *See id.* at § 404.1527(c)(1)–(6).

While an ALJ should afford considerable weight to opinions and diagnoses of treating physicians when determining disability, sole responsibility for this determination rests with the ALJ. *Newton*, 209 F.3d at 455. If evidence supports a contrary conclusion, an opinion of any physician may be rejected. *Id.* A treating physician's opinion may also be given little or no weight when good cause exists, such as "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 455–56. Nevertheless, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in [then] 20 C.F.R. § 404.1527(d)(2)." *Id.* at 453. A detailed analysis is unnecessary, however, when "there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another" or when the ALJ has weighed "the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458.

Here, the ALJ noted Dr. Oteo's opinions on Plaintiff's functional limitations, and he stated that treating source opinions are "well-placed to explain the presence of disabling limitations." (R.

at 37.)  He proceeded to set forth the six factors for weighing treating source opinions, including the treatment relationship and specialization.  (R. at 37-38.)  After noting that Dr. Oteo never specified his rationale for his opinion on Plaintiff's limitations, the ALJ found that Dr. Oteo's records deserved "considerable, but split weight."  (R. at 38.)  The ALJ did not give full weight "to the conclusions that are missing the supporting rationale," namely the opinions on the functional limitations form, but he did give full weight to Dr. Oteo's other conclusions with supporting rationale in the medical records and treatment notes.  (*Id*.)  He later noted that throughout the "longitudinal history of being treated by a chiropractor after falling . . . [and throughout] the medical record, [Plaintiff's] physical examination was largely normal."  (R. at 41.)  The ALJ instead gave substantial weight to the examining opinions of Drs. Chen and Cole and the assessments of Drs. McCrary and Rowlands based upon the medical evidence on record.  (R. at 39.)  None of the other medical records indicated physical limitations as significant as those of Dr. Oteo on his assessment form.  (R. at 28-31.)

The ALJ did consider the proper factors in analyzing and discounting Dr. Oteo's opinions on Plaintiff's functional limitations.  Regardless, he was not required to perform a full factor-by-factor analysis when rejecting Dr. Oteo's opinion because he relied on competing first-hand medical evidence, including Dr. Oteo's own treatment notes, and he found the opinions of the other examining physicians more well-founded.  *See Newton*, 209 F.3d at 458.  The ALJ's decision to reject Dr. Oteo's treating source opinion on Plaintiff's functional limitations does not amount to reversible error.  *See id.*  To the extent that Plaintiff complains of the failure to include the medical opinions from Dr. Oteo on the physical limitations in Plaintiff's RFC, the ALJ did not

err, and remand is not required on this issue.[9]

## F.   New Evidence

Plaintiff argues that remand is required because the Appeals Council failed to adequately and appropriately consider newly submitted evidence.  (doc. 15 at 23-24.)

When a claimant submits new and material evidence that relates to the period before the date of the ALJ's decision, the Appeals Council must consider the evidence in deciding whether to grant a request for review. 20 C.F.R. § 404.970(b).  The regulations do not require the Appeals Council to discuss the newly submitted evidence, or to give reasons for denying review.  *See Sun*, 793 F.3d at 511.  New evidence submitted to the Appeals Council becomes part of the record upon which the Commissioner's decision is based.  *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). A court considering the Appeals Council's decision must review the record as a whole to determine whether the Commissioner's decision is supported by substantial evidence, and should remand only if the new evidence dilutes the record to such an extent that the ALJ's decision becomes unsupported.  *Higginbotham v. Barnhart*, 163 F. App'x 279, 281-82 (5th Cir. 2006); *Morton v. Astrue*, No. 3:10–CV–1076–D, 2011 WL 2455566 at *7 (N.D. Tex. June 20, 2011) ("The proper inquiry concerning new evidence takes place in the district court, which considers whether, in light of the new evidence, the Commissioner's findings are still supported by substantial evidence.") (citations omitted).

Newly submitted evidence is material if: (1) it relates to the time period for which the disability benefits were denied; and (2) there is a reasonable probability that it would have changed

---

[9]  In his first section, Plaintiff appears to argue that the ALJ should have included walking and "sit stand option" requirements in his functional limitations .  (doc. 15. at 7-8.)  Substantial evidence supports the ALJ's exclusion of the walking and "sit stand option" from Plaintiff's RFC because the medical evidence from Drs. Chen and Cole shows that Plaintiff had normal physical exams and "no distress" walking or sitting.  (R. at 269-77, 331-32.)

the outcome of the disability determination.   *Castillo*, 325 F.3d at 551-52.  Evidence of a later-acquired disability or a subsequent deterioration of a non-disabling condition is not material. *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985).   Generally, "the Commissioner need 'not concern evidence of later-acquired disability or of the subsequent deterioration of the previously nondisabling condition,'" because they fail to meet the materiality requirement.  *Powell v. Colvin*, No. 3:12-CV-1489-BH, 2013 WL 5433496 at *11 n.9 (N.D. Tex. 2013) (quoting *Johnson*, 767 F.2d at 183).   Post-dated records may meet the first prong of materiality, however, as long as the records relate to the time period for which disability benefits were denied.  *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (holding that new evidence of scar tissue related to the adjudicative period because it resulted from a prior surgery).

Here, Plaintiff submitted the results from an MRI on his lumbar spine that he received at North Texas Digital Imaging on June 1, 2015. (R. at 8, 16, 343-51.)   He additionally submitted several medical opinions dated between June 4, 2015, and October 22, 2015, from Drs. Oteo, Abdo, and Patel, that interpreted these results as showing evidence of disc herniation.  (R. at 8-10, 12-13, 16.)  Drs. Abdo and Patel further opined that Plaintiff should "continue his activities as tolerated," (R. at 16), and noted that his motor strength is "5/5 in bilateral upper and bilateral lower extremities" with a normal gait and station, (R. at 12).

All of the new evidence post-dates the ALJ's decision by at least three months.  These records are, at most, evidence of a subsequent deterioration of a previously non-disabling condition, and "[r]emand is not appropriate 'solely for the consideration of evidence of a subsequent deterioration of what was correctly held to be a non-disabling condition.'"  *Hamilton-Provost v. Colvin*, 605 F. App'x 233, 239 (5th Cir. 2015).  Plaintiff argues that the MRI records do pertain to

24

the period at issue because Dr. Cole diagnosed Plaintiff with a herniated disc during his examination. (doc. 15 at 24.)  Even assuming that these records relate to the time period at issue, they simply reiterate medical evidence and opinions from Dr. Cole that was previously considered.  As noted, Dr. Cole diagnosed a herniated disc during his examination, and the ALJ assigned that particular diagnosis "substantial weight" along with Dr. Chen's medical opinions.  (R. at 39.)  Despite the substantial weight, the ALJ found that the objective medical evidence, including the herniated disc diagnosis, did not support Plaintiff's claim of impairment. (R. at 42-43.) The ALJ has already made fact findings on the impairments due to the herniated disc, and there remains no "considerable uncertainty" of whether he considered this diagnosis.  *See Sun*, 793 F.3d at 513.

Reviewing the record as a whole, the new evidence did not dilute the record to the extent that the ALJ's decision became insufficiently supported.  It was not inconsistent with the ALJ's finding that Plaintiff's functional limitations still allowed him to perform past relevant work as a truck driver.  *See Pope v. Colvin*, No. 4:13–CV–473–Y, 2014 WL 1724766 at *5 (N.D. Tex. May 1, 2014) (finding that the new evidence showing a new diagnosis of macular edema did not dilute the record when there was no evidence that such impairment impacted the claimant's ability to work); *see also Morton*, 2011 WL 2455566 at *7 (stating that if, "in light of the new evidence, the [ALJ's] findings are still supported by substantial evidence," the Court must affirm the Commissioner's decision.). Remand is not appropriate on this ground.

### III. RECOMMENDATION

The Commissioner's decision should be **AFFIRMED**.

25

**SO RECOMMENDED** on this 13th day of February, 2017.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE